UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

United States of America

v.

Arnold Wrobel et al.,

       Defendants.

**Report and Recommendation
and
Decision and Order**
12-CR-125W

## I. INTRODUCTION

Defendants Arnold Wrobel, Martin Rhys Jones, Monica Romaszko, Gene Clark Foland, Jeffrey G. Klein, Walter Tatum, Joel Marcus, Saad Shuaib, David Cole, Raymond Malizio, Kyle Clayton, and Jamie Lee Church allegedly conspired to trick investors into buying higher-value common stock when they really were buying lower-value restricted stock. The alleged conspiracy manifested itself as a "boiler room" sales operation headquartered in Spain with bank accounts, stock suppliers, and escrow agents located in this District and elsewhere. The Government filed an indictment against all 12 defendants on April 17, 2012. Cole and Clayton remain fugitives as of this writing. Wrobel, Jones, Romaszko, Malizio, and Church have entered guilty pleas and either have been sentenced or await sentencing. Foland, Klein, Tatum, Marcus, and Shuaib have spent time reviewing the considerable amount of discovery and now have filed omnibus dispositive and non-dispositive pretrial motions.

This case was referred to this Court under 28 U.S.C. § 636(b). (Dkt. No. 2.) The Court held oral argument on June 19, 2017 and allowed for any supplemental disclosures through June 26, 2017. The Court now issues its rulings and recommendations as explained below.

I.   INTRODUCTION ................................................................................................1
II.  BACKGROUND ...............................................................................................3
III. DISCUSSION ....................................................................................................5
  A.  Jeffrey G. Klein ..............................................................................................5
    i.    Motion to Dismiss Indictment (Dispositive) ..........................................5
    ii.   Motion for Bill of Particulars (Non-dispositive) ...................................13
    iii.  Motion for FRE 404(b) and 609 Material (Non-dispositive) .................17
    iv.   Motion for Notice of Expert Witnesses (Non-dispositive) ....................17
  B.  Gene Clark Foland .........................................................................................18
    i.    Motion to Dismiss Indictment (Dispositive) ........................................18
    ii.   Motion for Bill of Particulars (Non-dispositive) ...................................19
    iii.  Motion for Brady / Jencks / Giglio Material (Non-dispositive) .............22
    iv.   Motion for FRE 404(b) and 609 Material (Non-dispositive) .................24
    v.    Motion for Notice of Expert Witnesses (Non-dispositive) ....................25
  C.  Joel Marcus ....................................................................................................26
    i.    Motion to Dismiss Indictment (Dispositive) ........................................26
    ii.   Motion for Bill of Particulars (Non-dispositive) ...................................28
    iii.  Motion for Grand Jury Disclosures (Non-dispositive) ..........................29
    iv.   Motion for Severance (Non-dispositive) ................................................30
    v.    Motion for Expert Disclosure (Non-dispositive) ...................................30
  D.  Saad Shuaib ....................................................................................................31
    i.    Motion to Dismiss Indictment (Dispositive) ........................................31
    ii.   Motion for Grand Jury Disclosures (Non-dispositive) ..........................32
    iii.  Motion for Rule 12 and 16 Discovery (Non-dispositive) .......................33
    iv.   Motion for Brady / Jencks / Giglio Material (Non-dispositive) .............33
    v.    Motion for Exclusion Under Bruton (Dispositive) ................................34
    vi.   Motion for Bill of Particulars (Non-dispositive) ...................................34
    vii.  Motion for Disclosure of Confidential Informants (Non-dispositive) ....35
    viii. Motion for FRE 404(b), 608, and 609 Material (Non-dispositive) .........37
    ix.   Motion for Preservation of Notes (Non-dispositive) ..............................37
    x.    Motion for Voir Dire of Government Experts (Non-dispositive) ............38
  E.  Walter Tatum ..................................................................................................38
IV.  CONCLUSION ................................................................................................39
V.   OBJECTIONS ..................................................................................................39

## II.    BACKGROUND

Since the five remaining pretrial defendants have filed a number of motions that will require separate treatment, the Court here will limit its background discussion to the general facts of the case common to all defendants.

Briefly, this case concerns allegations that defendants conspired to defraud investors by selling shares of corporate stock that they did not have and by passing off restricted stock as common stock.  The indictment (Dkt. No. 1) neatly summarizes the alleged conspiracy as follows:

> Small, privately held United States corporate entities could issue shares of stock, including freely traded shares which were considered "over-the-counter" trades, and which were reported on the "over-the-counter" bulletin board ("OTCBB") or "pink sheets."  The OTCBB and pink sheets were quotation mediums that contained quotations for thousands of over-the-counter stocks not listed on any of the major stock markets.  Shares which had values considerably less than a dollar per share were sometimes referred to as "penny stock."
>
> Small, privately held corporate entities could also issue restricted shares, which could not be freely traded, including so-called "Reg S" shares, that is, sales of shares restricted to purchasers outside of the United States.  The sales of restricted shares were not reported on the "over the counter" bulletin board or "pink sheets."  Restricted shares had a value far less than that of freely traded shares.
>
> JONES and WROBEL ran a telemarketing operation, sometimes referred to as a "boiler room," from a number of locations in Barcelona, Spain.  In this operation, callers contacted prospective investors by telephone to sell "over the counter" or "pink sheet" stocks, using high pressure sales tactics and fraudulent statements and representations.  The boiler room used a variety of names, beginning with Newbridge International, then Brecon Global, then Strategic Energy Partners, and then Hammerson Equity Group.
>
> The boiler room obtained shares of restricted stock issued by various companies, including Intersecurity Holdings Corporation ("IXSV"); Universal Energy Corporation ("UVEC"); Rhino Outdoor International, later known as Xtreme Motorsports International ("RHOI" and "XTMS"); and Clean Coal Technologies, Inc. ("CCTI" or "CCTC"), which were sold to investors without

disclosing the fact that the shares were restricted and leading the investors to believe that the shares were freely traded shares.

   The boiler room also sold shares of Green Energy Live ("GELV"), without ever obtaining those shares.

   FOLAND was instrumental in identifying shares of stock to sell to the boiler room.

   KLEIN served as an escrow agent for stock transfers to the boiler room.

   COLE, CLAYTON, CHURCH and MALIZIO worked in Barcelona, Spain at the boiler room operated by WROBEL and JONES.

(Dkt. No. 1 at 4–6.)

Later in the indictment, the Government elaborated on the division of labor within the conspiracy.  Some defendants obtained restricted stock to be sold.  Others acted as first-level callers or "fronters."  These callers initiated contact with people whose names were obtained from direct mail companies and other sources.  The fronters used scripts to identify potential targets; upon identifying a potential target, the fronter passed the target to a more experienced caller or "closer."  The closers used various techniques to persuade the potential targets to purchase restricted stock passed off as common stock.  When purchases occurred, they occurred by wire transfer, and the conspiracy allegedly had ways to funnel the fraud proceeds to individual defendants as their share and to corporate shell entities within defendants' control.  At least one of these corporate shell entities was incorporated within this District.  (*Id.* at 13.)  Between 2006 and 2009, the alleged conspiracy generated several million dollars of proceeds.

This case began when the Government filed the indictment under seal on April 17, 2012. The indictment contains a total of 40 counts, with all defendants named in Count One and

different defendants named in the other counts.  In Count One, the Government accused all defendants of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349.  In Counts 2 through 30, the Government accused the first five listed defendants with 29 individual wire transfers, each of which constituted wire fraud in violation of 18 U.S.C. §§ 1343 and 2.  The remaining counts consist of accusations of conspiracy to engage in money laundering (18 U.S.C. § 1956(h)); and money laundering (18 U.S.C. §§ 1956(a)(2)(A), 1957(a), and 2).  The indictment also contained a forfeiture notice for at least $5 million of proceeds from the wire fraud conspiracy listed in Count One.

III.    **DISCUSSION**

    *A.  Jeffrey G. Klein*

        *i.    Motion to Dismiss Indictment (Dispositive)*

Klein has made a motion to dismiss the indictment under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure ("FRCP").  (Dkt. No. 565.)  Klein first argues a lack of sufficient detail—specifically, an absence of "any allegation, inference, or indicia that KLEIN knew or had reason to know about the boiler room allegedly operated in Spain by Defendants WROBEL and JONES, with COLE, CLA YTON, CHURCH, and MALIZIO.  Being an attorney and working as an escrow agent for overseas stock transactions is legal.  The Indictment further fails to specify any allegation of fact that KLEIN was involved in or knew or had any reason to know about the overseas boiler room operation.  Thus, the Government has failed to identify the specific conduct and information that forms the basis of KLEIN's alleged criminal liability and to describe a particular criminal act by KLEIN, rather than a type of crime."  (Dkt. No. 565 at 4–5.)  Klein next argues a failure to state an offense.  With respect to any specific offenses advanced by any alleged

conspiracy, Klein notes that "the transfer of restricted stock shares to European buyers—here,

Spain—is legal under the [Securities] Act [of 1933]." (*Id.* at 12.) Klein argues that the Government

has not done enough to allege wire fraud against him, since the indictment "fails to allege even

one fact to establish any 'knowledge and criminal intent' as to KLEIN, and further it alleges as to

KLEIN only inadvertent acts or acts done 'in good faith without any intent to defraud.'" (*Id.* at

16.) Klein argues further that the necessary knowledge and intent also are missing to establish any

money laundering accusation against him. (*Id.* at 18.) Without an underlying offense sufficiently

defined, according to Klein, no conspiracy can exist. "Tacit or express, there simply must be an

agreement between the charged defendants to engage in or carry out unlawful activity for a

criminal conspiracy charge to lie." (*Id.* at 20.) In the alternative, Klein argues that the

Government should at least furnish a bill of particulars under FRCP 7(f).

The Government opposes Klein's motion in all respects. The Government notes that "the

introductory allegations section of the Indictment, which was incorporated by reference as to each

count listed in the Indictment, identifies each of the conspirators and the role each played in the

conspiracy." (Dkt. No. 594 at 5.) The Government then argues that other portions of the

indictment put Klein on notice that he transferred fraud proceeds to himself for his own benefit.

The Government argues further that it has no obligation to explain how it will prove that Klein

had the necessary intent. With respect to legal sufficiency, the Government argues that

compliance with the Securities Act of 1933 by itself is a separate matter from the criminal

conspiracy that Klein allegedly joined. "The defendant would have this Court believe that all acts

that do not contravene the Securities Act are legal. However, nothing could be further from the

truth.  For example, the defendant is charged in the first count of the Indictment with conspiring with others to defraud investors by, among other things, making false representations and promises to prospective investors.  Whether that is a violation of the Securities Act is of no import. The defendant is not charged with a Securities Act violation.  He is charged in Count One of the Indictment with conspiring to commit wire fraud."  (*Id.* at 8.)

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.  It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished. Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117–18 (1974) (internal quotation marks and citations omitted).  "The court is limited, however, in what it may consider during this analysis.  Its determination must be based on whether the facts alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict.  Generally speaking, it is a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a jury." *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011) (citation omitted).

In Count One, Klein faces a charge of conspiracy to commit wire fraud under 18 U.S.C. § 1349, not wire fraud itself. To be legally sufficient, the conspiracy accusation must contain three elements: "(1) a conspiracy existed; (2) the defendant knew of it; and (3) the defendant knowingly and voluntarily joined it." *United States v. Moran*, 778 F.3d 942, 960 (11th Cir.), *cert. denied sub nom. Huarte v. United States*, 136 S. Ct. 268, 193 L. Ed. 2d 196 (2015). "It is well settled that in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy, or to state such object with the detail which would be required in an indictment for committing the substantive offense. In charging such a conspiracy certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is necessary." *Wong Tai v. United States*, 273 U.S. 77, 81 (1927) (internal quotation marks and citations omitted). What matters, therefore, is an agreement that includes an agreement on the criminal conduct that will occur. "A conspiracy is an agreement among the conspirators. A meeting of minds is required . . . . The law of conspiracy requires agreement as to the object of the conspiracy. This does not mean that the conspirators must be shown to have agreed on the details of their criminal enterprise, but it does mean that the essential nature of the plan must be shown." *United States v. Rosenblatt*, 554 F.2d 36, 38 (2d Cir. 1977) (internal quotation marks and citations omitted). "[A] general agreement to engage in unspecified criminal conduct is insufficient to identify the essential nature of the conspiratorial plan. Proof of the essential nature of the plan is required because the gist of the offense remains the agreement, and it is therefore essential to determine what kind of agreement or understanding existed as to

8

each defendant." *Id.* at 39 (internal quotation marks and citations omitted). Establishing the essential nature of the plan does not require establishing the manifestation of the plan through overt acts. "[A] conspiracy conviction under § 1349 does not require proof of an overt act." *United States v. Roy*, 783 F.3d 418, 420 (2d Cir. 2015).

Applying the above principles to Count One, the indictment contains several pieces of information that link Klein to an alleged conspiracy involving restricted stock sales. The indictment describes a complex boiler room operation in which all of the defendants played different roles in deceiving investors about the value of restricted stock. The indictment sets forth Klein's role in the operation: He "served as an escrow agent for stock transfers to the boiler room." (Dkt. No. 1 at 5.) Note that the indictment does not read the way Klein would prefer; it does not say that Klein was going about his business as an attorney, and that some of his clients just happened to be some of the defendants in this case. The indictment says, in essence, that Klein *served the boiler room*, which implies at a minimum that he was aware of at least some aspect of the boiler room that distinguished it from his other clients and that he wanted to help anyway. The indictment then explicitly accuses Klein of agreeing to the scheme involving the boiler room. (*Id.* at 6.) The indictment continues that Klein was instrumental in obtaining the restricted stock for an entity (*i.e.*, the boiler room) that changed aliases three times in just one year. (*Id.* at 12, 15.) These allegations again imply that Klein had at least some idea of the nature of the operation and endorsed it. Klein of course is presumed innocent and has every right to attack whatever proof that the Government thinks that it has about his knowledge of the conspiracy. Whether the Government can sustain its burden at trial, however, is an evidentiary matter separate from the

9

sufficiency of the indictment.  For now, the Government has done enough to put Klein on notice

that it thinks that a boiler room operation existed, that Klein knew about it, and that Klein agreed

to help—specifically through helping to obtain restricted stock and not, for example, through

making phone calls.

In Counts 2 through 30, Klein faces charges of specific transactions that amounted to wire

fraud under 18 U.S.C. § 1343 (including aiding and abetting under 18 U.S.C. § 2).  "[T]he

essential elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or

property as the object of the scheme, and (3) use of the mails or wires to further the scheme.  With

respect to the second element of these offenses, the government need not prove that the scheme

successfully defrauded the intended victim.  However, the government must show that some actual

harm or injury was contemplated by the schemer.  Thus, fraudulent intent is essential to a scheme

to defraud."  *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir. 1996) (internal quotation and

editorial marks and citations omitted).  Here, the indictment sets forth that Klein and others

"transmitted or caused to be transmitted" each of the wire transfers that makes up a count.  (Dkt.

No. 1 at 18–21.)  Klein thus is on notice that the Government intends to show that he had

something to do with making the actual wire transfers happen.  By this point in the indictment,

Klein already is on notice that the boiler room operation constituted a scheme to defraud.  Adding

in the voluminous discovery that the Government has produced, Klein has enough to prepare for

trial with respect to the alleged wire transfers.

In Count 31, Klein faces a charge of conspiracy to commit money laundering under 18

U.S.C. § 1956(h).  As with conspiracy to commit wire fraud, conspiracy to commit money

laundering does not require any proof of an overt act. *Whitfield v. United States*, 543 U.S. 209, 215 (2005) (citations omitted). "The rationale is that the crime of conspiracy is complete whether or not the substantive offense which was its object was committed." *United States v. Wydermyer*, 51 F.3d 319, 325 (2d Cir. 1995) (citation omitted). The indictment sets forth that Klein and others reached an agreement to engage in certain financial transactions that would constitute money laundering. (Dkt. No. 1 at 22.) The Government has accused Klein of executing specific wire transfers to other defendants "for their share of the fraud proceeds." (*Id.* at 24.) This phrasing implies that Klein would have known what anyone's "share" was based on the conspiracy agreement and that he was the sole or principal actor for at least some transfers. *Cf. United States v. Walters*, 963 F. Supp. 2d 125, 133 (E.D.N.Y. 2013) (finding a charge of money laundering conspiracy sufficient, where the defendants "knowingly and intentionally conspired to, and did, make deposits, withdrawals and transfers of funds, which were of a value greater than $10,000, and which were derived from the specified unlawful activities of extortion and wire fraud, in violation of 18 U.S.C. §§ 1956(h) and 1957(a). These allegations thus contain all elements of the offenses, and they are sufficient to withstand Defendants' motion."). Count 31 contains the necessary elements for a money laundering conspiracy, and again given the discovery that defendants have reviewed, Klein has adequate notice of how to prepare for trial.

Finally, Counts 32 through 34 contain allegations of transactions that violated 18 U.S.C. 1957(a) (and 18 U.S.C. § 2). Section 1957(a) covers transactions that occur outside the United States and punishes a United States person who "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived

11

from specified unlawful activity."  Here, Klein is on notice that the boiler room operated outside the United States and that he allegedly received three wire transfers of over $10,000 each.  (Dkt. No. 1 at 26.)  Klein also is on notice that the money involved in the wire transfers constituted criminal proceeds from the boiler room operation.  As with the other parts of the indictment, evidentiary issues are another matter, but Klein has enough notice for now that he can review the voluminous discovery produced and prepare an adequate defense.

The Court thus concludes that the indictment sufficiently states the necessary elements of all of the charges against Klein, including that he entered agreements with other defendants concerning wire fraud and money laundering.

The only other part of Klein's motion that warrants a brief comment is part of his argument that the indictment fails to state an offense against him.  As part of his argument that he was nothing more than a domestic escrow agent, Klein argues that "[s]ignificantly, the plain language of 17 C.F.R. § 230.901, expressly provides that under the Securities Act, 'the terms offer, offer to sell, sell, sale, and offer to buy shall be deemed to include offers and sales that occur within the United States and shall be deemed not to include offers and sales that occur outside the United States.'"  (Dkt. No. 565 at 11.)  Klein has correctly quoted the latter two-thirds of Section 230.901, but he left out the important first third of that section: "For the purposes *only of section 5 of the Act* (15 U.S.C. § 77e) . . . ."  17 C.F.R. § 230.901 (emphasis added).  The first third of the sentence clarifies that the limitations in Section 230.901 apply only to portions of the Securities Act of 1933.  The question in this case is not whether Klein violated the Securities Act of 1933 by mishandling restricted stock in ways required by that statute.  The question is whether he should

12

face criminal liability for helping a boiler room operation lie to people to steal their money. Klein unintentionally acknowledges the thrust of the Government's accusations when he states—hypothetically, in his view—that "[o]nly where such an agent knew about, had reason to know about, knowingly and intentionally participated in, or was otherwise knowingly involved in intentionally fraudulent activities would his conduct run afoul of the law." (Dkt. No. 565 at 13–14.) That is exactly the Government's point. Klein wants to argue that he was an innocent domestic escrow agent who did not know how the other defendants were applying his services. (*See also* Dkt. No. 627 at 3 ("KLEIN's role was nominal at best and pales in comparison to the relative culpability of Co-Defendants. In essence, KLEIN was an innocent who was duped by said Co-Defendants.").) For all that the Court knows, that argument might succeed at trial as a way of preventing the Government from meeting its burden of proof. The substance behind that argument, however, has nothing to do with the adequacy of the Government's accusations as set forth in the indictment.

For all of the above reasons, the Court recommends denying Klein's motion to dismiss the indictment.

### ii.    *Motion for Bill of Particulars (Non-dispositive)*

Klein has made a motion for a bill of particulars (Dkt. No. 566) that would clarify the Government's accusation that he knew that his escrow services were helping a boiler room operation defraud investors. Among other details, Klein wants to know more detail about how he allegedly was "instrumental" in obtaining restricted stock for the boiler room. Klein also seeks details about his alleged connection to the specific wire transfers listed in the indictment as

incidents of wire fraud or money laundering.  The Government counters that "the United States
has been very cooperative in providing voluminous, databased, and indexed discovery.  More
specifically, the United States furnished more than 9 DVD's containing thousands of discovery
documents.  Information that was provided more than two years ago.  The United States
facilitated this production as the DVD's were intended to be compatible with any litigation
software currently in use - i.e., the discovery was readily loadable into a searchable format.  The
United States also provided an index of these materials to the defendant to allow him to review
the discovery provided.  As in all of the cases discussed above, the United States has been
cooperative in furnishing discovery and in guiding the defendant in reviewing same; the discovery
has been provided in an indexed and electronically-searchable format; and most, if not all, of the
information the defendant seeks through a bill of particulars is already available to him in this
discovery."  (Dkt. No. 592 at 15.)

"Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of
particulars in order to identify with sufficient particularity the nature of the charge pending against
him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of
double jeopardy should he be prosecuted a second time for the same offense."  *U.S. v. Bortnovsky*,
820 F.2d 572, 574 (2d Cir. 1987) (per curiam) (citations omitted).  "Moreover, it is of no
consequence that the requested information would have required the disclosure of evidence or the
theory of the prosecution.  While a bill of particulars is not intended, as such, as a means of
learning the government's evidence and theories, if necessary to give the defendant enough
information about the charge to prepare his defense, it will be required even if the effect is

disclosure of evidence or of theories.  A district court judge, however, has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form." *U.S. v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (internal quotation marks and citations omitted).  In Hobbs Act conspiracy cases, for example, courts have ordered "a bill of particulars containing the names of the contractors, construction sites, and projects targeted by the conspiracy." *U.S. v. Mulder*, 273 F.3d 91, 100 (2d Cir. 2001); *see also U.S. v. Coppola*, 671 F.3d 220, 240 (2d Cir. 2012) (noting in passing that a bill of particulars had been issued).  Courts have denied motions for bills of particulars where "the indictment specifies the time, place and nature of the alleged criminal conduct . . . . [and where] the government has produced pursuant to Rule 16 relevant police records from the date of the crime as well as the amended criminal complaint, which further specifies the acts [defendant] is accused of committing." *U.S. v. Remire*, 400 F. Supp. 2d 627, 633 (S.D.N.Y. 2005); *see also U.S. v. Davis*, No. 06 CR 911 (LBS), 2009 WL 1098477, at *4 (S.D.N.Y. Apr. 21, 2009) (denying a bill of particulars where "the Government has already disclosed that it intends to prove at trial that the targets of the robbery were engaged in interstate drug trafficking, including the purchase of marijuana from California for resale to customers in Manhattan and the Bronx").

Here, the information that Klein has received so far makes a bill of particulars unnecessary. The indictment itself contains a fairly extensive amount of detail about a boiler room operation that used fronters, closers, call scripts, attorneys, and bank accounts in this District, in Spain, and elsewhere, to defraud investors.  *Cf. United States v. Binday*, 908 F. Supp. 2d 485, 497 (S.D.N.Y. 2012) ("Here, the 32-page indictment is extremely detailed and voluminous discovery has already

been provided to defendants.").  The indictment assigns a specific role to Klein—he procured restricted stock and handled some of the resulting financial transactions.  *Cf. United States v. Rigas*, 258 F. Supp. 2d 299, 304–05 (S.D.N.Y. 2003) ("First, unlike indictments involving a worldwide criminal conspiracy, or defendants who are identified as tangential participants in the criminal activity, the present case involves a small group of defendants who are alleged to have had intimate involvement with the preparation and carrying out of a series of fraudulent activities over a three-year period.  Even if the alleged conspiracy is multi-faceted, Defendants are simply not faced with an indictment that lacks a shred of detail about the nature of the charges.  The Indictment sets forth each aspect of the scheme in a manner sufficient to apprise Defendants of the conduct with which they are charged.  Furthermore, the Indictment must be viewed in the broader context of the information available to Defendants.") (internal quotation marks and citations omitted).  The Court has not seen the voluminous discovery that the Government has produced, but the case docket sheet indicates that the case is over five years old partly because of repeated requests from defense counsel for more time to review all of the details in that discovery.  Surely that discovery has been at least a little helpful in advising Klein of what the Government thinks that he did to advance the boiler room operation.

Klein and all the defendants thus have sufficient notice of the charges against them to allow for the proper preparation of a defense, to avoid surprise at trial, and to protect them from double jeopardy.  The Court accordingly denies the request for a bill of particulars.

### iii.    Motion for FRE 404(b) and 609 Material (Non-dispositive)

Klein seeks notice of evidence that the Government would use at trial under Federal Rules of Evidence ("FRE") 404(b) and 609.  FRE 404(b) governs requests for disclosure of all evidence of prior bad acts that the Government intends to use in its case-in-chief.  FRE 404 requires that defendants be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial."  To the extent that the Government intends to use any such evidence of a prior bad act in its case in chief, the Government will produce all FRE 404(b) evidence as directed by Judge Wolford in the eventual trial order.

With respect to Klein's request under FRE 609, the only notice requirement applies closer to trial.  FRE 609(b)(2) mandates that "the proponent [give] an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."  To the extent that the Government intends to use at trial evidence falling under these rules, it must give reasonable notice as directed by Judge Wolford in the trial order.

The Court grants Klein's motion in part as explained above and denies it to the extent that it seeks any other relief.

### iv.    Motion for Notice of Expert Witnesses (Non-dispositive)

Klein has made a brief request for "notice from the Government of any and all expert witnesses that they intend to call at trial and their reports and CV's pursuant to F.R.C.P. 16." (Dkt. No. 571 at 2.)  The Government responds that it "will comply with the defendant's request for expert testimony pursuant to Rule 16(a)(1)(G) of witnesses who will testify under Rules 702,

703 and 705 F.R.E. in advance of trial or as directed by the District Court." (Dkt. No. 594 at 17.)

The Government's proposal seems adequate at this time. FRCP 16(a)(1)(G) contains no deadline for expert discovery; it states only that discovery must occur "at the defendant's request." As long as the Government does not try to surprise Klein with any expert testimony, *see United States v. Tin Yat Chin*, 476 F.3d 144, 146 (2d Cir. 2007), a timetable that Judge Wolford sets should provide Klein with what he needs. The Court thus will defer ruling on Klein's motion to allow him to present Judge Wolford with whatever timetable he considers necessary.

### B. Gene Clark Foland

#### i. Motion to Dismiss Indictment (Dispositive)

Foland has made a motion to dismiss the counts of the indictment that name him. (Dkt. No. 570 at 4–7.) Foland's arguments are similar to Klein's. Foland argues that "[w]hile [his] name appears repeatedly throughout the Indictment, it fails to allege any actual criminal intent or activity. Rather, the drafter of the Indictment saw it fit to simply associate Mr. Foland with the allegedly criminal activities of others, call it 'conspiracy,' and leave the defense to sort out the rest." (*Id.* at 4.) As Klein does, Foland proceeds to compartmentalize his work as a stockbroker and to argue that the Government is trying to criminalize his job. "The Indictment's theory of guilt, if true, would make it a crime for any legitimate person or business to be associated with what turns out to be a criminal enterprise, so long as the government is given a sporting chance to prove that the accused 'could' have known, or 'should' have known, that the enterprise was illegitimate." (*Id.* at 5.) Foland argues that the other counts of the indictment fail for the same reason, namely that they detail innocuous conduct without detailing knowledge of illegal activity. The Government

18

picks up on Foland's compartmentalization and responds that Count One of the indictment "explicitly alleges that the defendant conspired with others to defraud investors and to obtain money by false and fraudulent pretenses, representations and promises. Otherwise 'innocuous' conduct, can become unlawful when done knowingly, willfully, and for the purpose of defrauding investors." (Dkt. No. 593 at 7.)

The same case law that the Court cited above for Klein's motion applies here, and Foland's motion fails for the same reasons. If the indictment did not contain the introductory allegations and the conspiracy counts (Count One and Count 31) then Foland would have a much stronger argument. In that scenario, the allegations of Foland's wire fraud transactions (Counts 2 through 30) would be so generic and conclusory as to be useless. The introductory allegations and conspiracy counts, however, state explicitly that Foland entered an agreement with the other defendants to commit wire fraud and money laundering. The indictment then sets forth a considerable amount of detail about how the boiler room operated and how each defendant had a specific role to play to advance the operation. Foland's role as a stockbroker (Dkt. No. 1 at 5, 12, 15) has to be considered in that context. Foland thus has adequate notice of the role in the scheme that the Government will assign to him at trial; coupled with the voluminous discovery that the Government has furnished, Foland has a reasonable opportunity to prepare a fair defense. The Court thus recommends denying Foland's motion to dismiss.

ii.    *Motion for Bill of Particulars (Non-dispositive)*

Foland has made a motion for a bill of particulars (Dkt. No. 570 at 7–8) as an alternative to dismissal of the indictment. The motion borrows arguments from the motion to dismiss; here,

Foland asserts that the request for a bill of particulars "is more than a mere attempt by the defense to acquire additional evidentiary detail; as explained above and in our Memorandum, the conduct the Indictment alleges against Mr. Foland is actually legal." (*Id.* at 8.) The rest of the motion reads like a policy argument for expanded use of the bill of particulars:

> The defense recognizes that Courts, unfortunately, do not [force] the government to state their theory of prosecution in an Indictment or a Bill of Particulars. For conspiracy cases in particular, the vaguest allegations are often enough to allow a trial, where whatever theories of guilt the government can come up with, no matter how attenuated from the original Indictment, are permitted.

> This is especially problematic where, as here, the Indictment recites a minimum of facts, leaving the Court and the defense to make the connection.

> The government's response to this request is often no more than to provide a detailed litany of all the evidence it has provided voluntarily, usually with some glib remark that the defense can "figure it out" from what has been provided. This is not, however, what should happen.

(*Id.* at 7.) The Government emphasizes that a bill of particulars can clarify ambiguous pleadings but should not act as an evidentiary tool to address the types of evidentiary requests that appear at the end of Foland's motion. The Government also calls out Foland for what it considers an inconsistency in his arguments:

> The defendant also makes completely inconsistent arguments to support his request for the relief sought. The defendant first complains that he was not provided enough information in the Indictment to prepare his defense and then complains when the government provided him with thousands of documents in discovery detailing the extent of the fraudulent activity, stating: "volumes of discovery are more harmful than helpful." Dkt. 570. ¶ 32. The defendant cannot have it both ways. The request for a bill of particulars is unjustified given the detail provided in the Indictment and the voluminous, organized, and indexed discovery that has already been provided by the United States.

(Dkt. No. 593 at 10.)

20

The case law that the Court cited for Klein's motion applies here. Similarly to Klein, and as the Court discussed above with his motion to dismiss, Foland is on notice that, in the Government's view, he knowingly entered an agreement with 11 other defendants to swindle investors by passing off restricted stock as common stock. Foland is further on notice that, again in the Government's view, the conspiracy assigned him the role of a stockbroker who helped obtain the restricted stock; and that he carried out his role to help enrich the conspiracy by several million dollars. Foland also has voluminous discovery that presumably shows which transactions he helped execute to carry out his role in the conspiracy. The information available to Foland is enough to avoid the kind of surprise at trial that the Second Circuit has criticized in complex cases:

> In this case the indictment charges a RICO conspiracy of seven years' duration carried out through various extortion offenses. The indictment puts Davidoff on notice that he will be obliged to defend against extortionate schemes directed at one company, AEI, and companies associated with it in contemplation of a merger. At trial Davidoff is then confronted with evidence of extortions aimed at entirely different companies. Though we agree with the Government that even in a RICO case it is not obliged to disclose before trial all of its evidence, we believe the trial judge exceeded his discretion in this RICO prosecution by denying a bill of particulars identifying at least the victims of discrete extortionate schemes that the prosecution intended to prove.

*United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988); *cf. United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) ("However, by the time Chen was called upon to cross-examine the government's witnesses, it was clear not only that the government was alleging several acts of extortion within the relevant time period, but also what those acts were. Indeed, Chen's counsel was given a full opportunity to cross-examine both Teoh and Hsu, and even elicited from Hsu denials that supported the defense's position. In these circumstances, we cannot hold that Chen

was unfairly surprised at trial.") (citation omitted).  Foland has preserved the record for a policy

argument if he wants to argue one at a later time through the appellate process.  For now, though,

the Court feels obligated to follow the established case law regarding bills of particulars.  The

Court thus denies Foland's motion for a bill of particulars but without prejudice to one issue

implied in *Davidoff* and *Chen*.  If for any reason the Government attacks Foland at trial with co-

conspirators, victims, or transactions that appear nowhere in the indictment, pretrial discovery, or

other trial disclosures then Foland should have the right to seek immediate relief from Judge

Wolford.

   iii.  *Motion for* Brady / Jencks / Giglio *Material (Non-dispositive)*

   Foland seeks information subject to disclosure under *Brady v. Maryland*, 373 U.S. 83

(1963), the Jencks Act, 18 U.S.C. § 3500, and *Giglio v. U.S.*, 405 U.S. 150 (1972).  "[S]uppression

by the prosecution of evidence favorable to an accused upon request violates due process where

the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith

of the prosecution . . . . Society wins not only when the guilty are convicted but when criminal

trials are fair; our system of the administration of justice suffers when any accused is treated

unfairly." *Brady*, 373 U.S. at 87.  The *Brady* rule covers situations "[w]hen the reliability of a given

witness may well be determinative of guilt or innocence."  *Giglio*, 405 U.S. at 154 (internal

quotation marks and citation omitted); *accord U.S. v. Bagley*, 473 U.S. 667, 676 (1985) (plurality

opinion) ("Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady*

rule.") (citing *Giglio*).  When considering information that might fall under the *Brady* rule, "[t]he

question is not whether the defendant would more likely than not have received a different verdict

with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). The Government does not necessarily have to await a defense request to produce information that falls under the *Brady* rule, but neither does it need to adopt an "open file policy." *See id.* at 437; *see also U.S. v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) ("Under *Brady* and its progeny, the government has an affirmative duty to disclose favorable evidence known to it, even if no specific disclosure request is made by the defense. The individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation.") (citations omitted). Also, "[e]vidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *U.S. v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982) (citations omitted). As for the timing of *Brady* disclosure, "[i]t is not feasible or desirable to specify the extent or timing of disclosure *Brady* and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made. Thus disclosure prior to trial is not mandated. Indeed, *Brady* requires disclosure of information that the prosecution acquires during the trial itself, or even afterward . . . . At the same time, however, the longer the prosecution withholds information, or (more particularly) the closer to trial the disclosure is made, the less opportunity there is for use." *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) (citations omitted).

Here, the Government has acknowledged its affirmative obligations for disclosure under *Brady*, the Jencks Act, and *Giglio*, and has committed to making disclosures within the time that Judge Wolford will set in the eventual trial order. The Government's commitment will suffice,

absent a showing that a different arrangement is necessary in this case. One brief comment is warranted regarding Foland's request that "this Court should require the government to provide, under seal, a full inventory of *all* the evidence it has which it has not yet disclosed in this case. The Court should review this material *in camera*, determine what, if any, materials could be 'favorable' to the defense, and then issue an order compelling the government to produce it." (Dkt. No. 570 at 10.) When prosecutors disclose information potentially affecting witness credibility, and courts refuse to investigate the details behind the information, that failure to conduct any *in camera* review or other investigation is reversible error. *See United States v. Kiszewski*, 877 F.2d 210, 216 (2d Cir. 1989); *accord United States v. Leung*, 40 F.3d 577, 583 (2d Cir. 1994) ("In the rare circumstances where such inspection is required, its purpose is not to provide a general discovery device for the defense; criminal defendants have no constitutional right to know the contents of Government files in order to present arguments in favor of disclosure. Rather, the purpose of *in camera* inspection is to supplement the Government's assessment of materiality with the impartial view provided by the trial judge."). So far, though, this case has not presented any circumstances that warrant further investigation by the Court. If Foland wants to make a policy argument for additional checks on prosecutorial "fibbing" (Dkt. No. 570 at 11) then he can do so through the appellate or political processes.

For the reasons explained above, the Court denies Foland's motion.

iv.    *Motion for FRE 404(b) and 609 Material (Non-dispositive)*

Like Klein, Foland seeks notice of evidence that the Government would use at trial under FRE 404(b) and 609. FRE 404(b) governs requests for disclosure of all evidence of prior bad acts

that the Government intends to use in its case-in-chief.  Again, FRE 404 requires that defendants be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial."  To the extent that the Government intends to use any such evidence of a prior bad act in its case in chief, the Government will produce all FRE 404(b) evidence as directed by Judge Wolford in the eventual trial order.

With respect to Foland's requests under FRE 609, the only notice requirement applies closer to trial.  FRE 609(b)(2) mandates that "the proponent [give] an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."  To the extent that the Government intends to use at trial evidence falling under these rules, it must give reasonable notice as directed by Judge Wolford in the trial order.

The Court grants Foland's motion in part as explained above and denies it to the extent that it seeks any other relief.

     *v.*    *Motion for Notice of Expert Witnesses (Non-dispositive)*

Foland has made a brief request for "notice of whatever expert testimony the government intends to offer at trial, pursuant to FRCP 16[(a)](1)(g)."  (Dkt. No. 570 at 12.)  The Government responds that it "will comply with the defendant's request for expert testimony pursuant to Rule 16(a)(1)(G) of witnesses who will testify under Rules 702, 703 and 705 F.R.E. in advance of trial or as directed by the District Court."  (Dkt. No. 593 at 18.)

The Government's proposal seems adequate at this time.  FRCP 16(a)(1)(G) contains no deadline for expert discovery; it states only that discovery must occur "at the defendant's request."

As with Klein, as long as the Government does not try to surprise Foland with any expert

testimony, *see United States v. Tin Yat Chin*, 476 F.3d 144, 146 (2d Cir. 2007), a timetable that

Judge Wolford sets should provide Foland with what he needs.  The Court thus will defer ruling

on Foland's motion to allow him to present Judge Wolford with whatever timetable he considers

necessary.

### C.  Joel Marcus

> i.    *Motion to Dismiss Indictment (Dispositive)*

Marcus has made three motions to dismiss Count One of the indictment, the only count

that names him.  (Dkt. Nos. 575, 576, 578.)  Marcus asserts that his only connection to the

indictment is that he happened to own shares of one of the restricted stocks allegedly at the center

of the conspiracy.  According to Marcus, he retained Klein as his attorney and signed the stock

over to him.  Klein then made all the arrangements to sell the stock.  Meanwhile, "the

Government interviewed several individuals who sold shares of over the counter or penny stock in

Spain." (Dkt. No. 578 at 3.)  Marcus's assertions lead to three arguments in favor of dismissal.

First, Marcus argues that the Government has made no showing that he knew about the

conspiracy or did anything knowingly to advance that.  Second, Marcus argues that he relied in

good faith on Klein's advice, which establishes a complete defense to the charge against him.

Third, Marcus argues that the Government's decision to prosecute him but not other people who

sold stock constitutes improper selective enforcement.

The Government opposes Marcus's motions in all respects.  The Government argues that

Count One sets forth all of the necessary elements of a conspiracy to commit wire fraud—namely,

that Marcus knew about the conspiracy and agreed to join it. "In making his claim that Count One is facially insufficient, the defendant is, in essence, making a sufficiency of the evidence claim, which is inappropriate at this stage of the proceedings." (Dkt. No. 595 at 6.) With respect to reliance on counsel, the Government acknowledges that the defense exists but notes that the defense is a fact-dependent, affirmative defense to be presented at trial. For the argument about reliance on counsel and the argument about selective enforcement, the Government additionally points out that Marcus has not provided any sworn assertions or any other factual information in evidentiary form to establish the substance of his arguments.

The same case law that the Court cited to address Klein's motion to dismiss applies here. Simply put, Count One puts Marcus on notice that, in the Government's view, he became aware of a conspiracy to defraud investors and freely chose to join that conspiracy. The Government also has put Marcus on notice of his alleged role in the conspiracy—he supplied some of the restricted stock that was fraudulently sold or otherwise was "instrumental" in obtaining it. (Dkt. No. 1 at 3, 12, 15, 18.) That notice, combined with the voluminous discovery that the Government has produced, is enough to allow Marcus to prepare to attack the Government's evidence at trial. For all that the Court knows, the argument about reliance on counsel might well prevail, but it is an affirmative defense that must await trial. *See, e.g., United States v. Romero*, 542 F. App'x 879, 883 (11th Cir. 2013) (unpublished decision); *United States v. Hoffecker*, 530 F.3d 137, 178 (3d Cir. 2008); *United States v. Impastato*, 543 F. Supp. 2d 569, 573 (E.D. La. 2008). Finally, claims of selective enforcement are fact-sensitive and typically require factual development through pretrial discovery and hearings. *See generally, e.g., United States v. Lamar*, No. 14 CR 726 PGG, 2015 WL

4720282 (S.D.N.Y. Aug. 7, 2015); *United States v. Viera*, No. 14 CR. 83 ER, 2015 WL 3833797

(S.D.N.Y. June 19, 2015); *United States v. Colon*, 71 F. Supp. 3d 269 (D. Conn. 2014); *United States*

*v. Occhipinti*, No. 91 CR. 0168 (CBM), 1991 WL 84557 (S.D.N.Y. May 14, 1991). Marcus at no

time requested any discovery or any proceedings to support his claim of selective enforcement.

Without more than the bare assertions in Marcus's motion, the Court can only let Judge Wolford

address whether Marcus should be allowed to argue selective enforcement at trial.

 For the above reasons, the Court recommends denying Marcus's motions to dismiss.

  ii. *Motion for Bill of Particulars (Non-dispositive)*

Marcus has made a motion for a bill of particulars. (Dkt. No. 579.) As Klein and Foland

have done, Marcus appears to separate Count One from the rest of the indictment and argues that

he "is the subject of a 'bare bones' Indictment which does not set forth adequate allegations of

criminality. Defendant has limited information as to who the witnesses against him will be. The

particularized need justifying additional discovery is so the defense can figure out misleading

information contained in the Indictment." (*Id.* at 2.) Marcus argues further that "without the

Government's disclosure of critically important evidence and information, Joel Marcus is unable

to avoid or at least mitigate surprise at trial and is unable to prepare adequately for his defense.

Given the vagueness of the allegations as to Joel Marcus and the noticeable absence of specific

factual allegations regarding his alleged criminal liability, Joel Marcus is further unable to invoke

the Double Jeopardy clause in any subsequent prosecution for the same offense." (*Id.* at 5.) The

Government responds that Count One contains all the necessary elements of the offense of

conspiracy and factual details going beyond the minimum requirements. The Government argues

further that Marcus is overlooking the extensive discovery that it has furnished and that provides evidentiary details about what he allegedly did to advance the conspiracy.

The Court applies the same case law that it cited when addressing similar motions by Klein and Foland. Count One does indeed provide Marcus with adequate notice that the Government believes that he knowingly and willingly entered a criminal conspiracy to defraud investors. The Government has furnished discovery with details about the stock that Marcus allegedly sold to advance the conspiracy. Marcus himself undermines his argument for bill of particulars with his references, quoted above, to discovery and evidence. A bill of particulars is not a discovery tool, and Marcus has enough notice of the allegations that the Government will present to a jury trial. Under these circumstances, the Court will deny Marcus's motion for a bill of particulars.

  iii.  *Motion for Grand Jury Disclosures (Non-dispositive)*

Marcus has made a motion for disclosure of grand jury testimony. (Dkt. No. 580.) Marcus states, in conclusory fashion, that he "is the subject of a 'bare bones' Indictment which does not set forth adequate allegations of criminality. Defendant has limited information as to who the witnesses against him will be. The particularized need justifying disclosure is so the defense can figure out misleading information given to the Grand Jury." (*Id.* at 2.) "Parties seeking disclosure have the burden of showing that the requested material is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *In re Grand Jury Subpoena*, 72 F.3d 271, 274 (2d Cir. 1995) (citation omitted). Here, Marcus's

request for disclosure is too speculative.  *See U.S. v. Smith*, 105 F. Supp. 3d 255, 261–62 (W.D.N.Y. 2015).  The Court denies the motion accordingly.

   iv. *Motion for Severance (Non-dispositive)*

  Marcus has made a motion to sever his trial from any other trials for his co-defendants. (Dkt. No. 577.)  Marcus expresses concern that evidence of the 29 counts of wire fraud and two counts of money laundering will overwhelm his defense against Count One, the only Count that names him.  Marcus also notes that he would call Klein as a witness as part of his defense about reliance on the advice of counsel.  "If this matter is severed and Joel Marcus' case is tried after Jeffrey Klein's case, Jeffrey Klein will not have Fifth Amendment privilege and will be able to come testify truthfully at Joel Marcus's trial.  It is verily believed that Jeffery Klein's testimony will exonerate Joel Marcus and that Jeffrey Klein's testimony is unavailable at a joint trial."  (*Id.* at 3.) The Government opposes the motion, arguing that co-conspirators usually are tried together and that Marcus has not made enough of a showing about the potential importance of Klein's testimony.

  This Court has a practice of deferring severance motions to the District Judge, who is in a better position to determine whether two or more trials in a case would better preserve defendants' rights.  The Court will maintain that practice here and defers ruling on Marcus's motion.  Marcus is free to pursue severance with Judge Wolford as he sees fit.

   v. *Motion for Expert Disclosure (Non-dispositive)*

  Marcus seeks the identity of Government expert witnesses and a summary of anticipated expert witness testimony.  (Dkt. No. 324.)  This one-page motion was filed some time ago, and the

Government appears not to have responded to it explicitly.  Nonetheless, the Government has responded to identical requests from other defendants and has committed to expert disclosure as Judge Wolford will specify in her eventual trial order.  The Court directs the Government to remain mindful of its obligations under Rule 16(a)(1)(G) but otherwise finds that its response to other defendants applies here and is sufficient at this time.

### D.  Saad Shuaib

#### i.    Motion to Dismiss Indictment (Dispositive)

Shuaib has made a motion to dismiss Count One of the indictment, the only Count that names him.  (Dkt. No. 567 at 3–6.)  Shuaib acknowledges that the Government in the indictment accuses him of obtaining restricted stock for the alleged conspiracy and of being an intended recipient of wired fraud proceeds.  (*Id.* at 3–4; *see also* Dkt. No. 1 at 11, 15, 17.)  Shuaib acknowledges further that he is one of the named conspirators in Count One.  Shuaib nonetheless argues that he never "knew that any of the stocks which were being transferred from him to any other individual were going to be sold in a boiler room situation or that any fraud would be committed on any other 'investor.'  Again, it is not alleged that Mr. Shuaib was specifically aware of any fraud which was taking place."  (Dkt. No. 567 at 4.)  Dismissal thus is warranted, in Shuaib's view, because the indictment contains no particularization about what he did to join or to advance any alleged conspiracy.  The Government responds that, like the other defendants, Shuaib ignores the extensive detail in the introductory allegations and in Count One about the nature of the conspiracy that Shuaib joined.  (Dkt. No. 592 at 5.)  The Government further asserts that

Count One contains all of the necessary elements of a conspiracy and need not contain any evidentiary basis for why the Government believes that Shuaib bears criminal liability.

The same case law that the Court cited to address Klein's motion to dismiss applies here. Count One puts Shuaib on notice that, in the Government's view, he became aware of a conspiracy to defraud investors and freely chose to join that conspiracy. If Shuaib knew about the alleged conspiracy and freely joined it then, for pleading purposes, the Government has satisfied all the elements for conspiracy to commit wire fraud. The indictment contains the additional information that Shuaib had a particular role to play for the conspiracy—supplying restricted stock—and that he fulfilled that role. That Shuaib appears to have had a smaller role in the overall boiler room operation is an evidentiary issue that he can explore at trial, but that issue does not affect the legal sufficiency of the accusation against him. Under these circumstances, and considering the significant amount of discovery that the Government has furnished the parties, the Court recommends denying Shuaib's motion.

  ii.  *Motion for Grand Jury Disclosures (Non-dispositive)*

Shuaib has made a brief motion for disclosure of grand jury testimony. (Dkt. No. 567 at 4.) Shuaib states, in conclusory fashion, that he "is the subject of a 'bare bones' Indictment, which in many ways does not set out criminal conduct. Mr. Shuaib has limited information as to who the witnesses against him will be. The particularized need justifying disclosure is so that we can figure out misleading information given to the grand jury. For these reasons, the grand jury transcripts and evidence should be disclosed to counsel, or at the very least reviewed by the court." (*Id.* at 4–5.) "Parties seeking disclosure have the burden of showing that the requested material is

needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *In re Grand Jury Subpoena*, 72 F.3d 271, 274 (2d Cir. 1995) (citation omitted). Here, Shuaib's request for disclosure is too speculative. *See U.S. v. Smith*, 105 F. Supp. 3d 255, 261–62 (W.D.N.Y. 2015). The Court denies the motion accordingly.

   *iii.*  *Motion for Rule 12 and 16 Discovery (Non-dispositive)*

   Shuaib seeks FRCP 16 discovery including discovery pertaining to cooperating individuals; search warrants; photographs; communications between the defendants; expert witnesses; statements; prior criminal history; tangible items; identifications; and tests. (Dkt. No. 567 at 7–11.) Shuaib also seeks appropriate notice under FRCP 12. The Government has responded broadly that it has furnished Rule 12 notice and Rule 16 discovery consisting of thousands of indexed pages of digital documents. (Dkt. No. 592 at 8.) Shuaib's motion appears to be moot at this time, but to the extent that any specific requests remain outstanding, the Government is directed either to furnish the information or to provide notice of an objection to production.

   *iv.*  *Motion for* Brady */* Jencks */* Giglio *Material (Non-dispositive)*

   Shuaib has made a motion for *Brady* / Jencks / *Giglio* material in a manner that resembles Foland's motion. (Dkt. No. 567 at 12, 30–46.) The Court applies the same standards here that applied to Foland's motion. In short, the Government has acknowledged its affirmative obligations for disclosure under *Brady*, the Jencks Act, and *Giglio*, and has committed to making disclosures within the time that Judge Wolford will set in the eventual trial order. The

Government's commitment will suffice, absent a showing that a different arrangement is necessary in this case.

     *v.*    *Motion for Exclusion Under* Bruton *(Dispositive)*

Shuaib has made a motion, under *Bruton v. United States*, 391 U.S. 123 (1968), to "bar the admission into evidence of all post-arrest statements by non-testifying co-conspirators/co-defendants which may implicate him in any way." (Dkt. No. 567 at 13.) The Government has acknowledged that several co-defendants made statements during the investigation or when arrested but asserts that "[n]one of the statements amounted to a confession and none of the statements implicated defendant, SHUAIB, in any way. The defendant has failed to articulate why such statements would adversely impact his position at trial or his trial strategy." (Dkt. No. 592 at 11–12.) The Government also argues that Shuaib's motion is premature.

The Court agrees that Judge Wolford will be in a better position to address any *Bruton* issues at a later time. *See United States v. Mirilishvili*, No. 14 CR. 810 CM, 2015 WL 5820966, at *15 (S.D.N.Y. Oct. 2, 2015). It is simply too soon to tell whether any *Bruton* issues actually will arise and will require severance. The Court accordingly recommends denying Shuaib's motion but without prejudice.

     *vi.*    *Motion for Bill of Particulars (Non-dispositive)*

Shuaib has made a motion for a bill of particulars. (Dkt. No. 567 at 14.) Shuaib argues that he needs a bill of particulars "because the charges in the indictment are so general and imprecise, particularly with respect to allegations in Count 1 which are repeated and realleged in each subsequent count, that they are confusing and do not advise defendants of the specific acts of

which he is accused." (*Id.* at 14–15.) Shuaib then proceeds to list the details that he believes a bill of particulars should contain. (*Id.* at 15–19.) The Government responds that Count One contains all the necessary elements of the offense of conspiracy and factual details going beyond the minimum requirements. The Government argues further that Shuaib is overlooking the extensive discovery that it has furnished and that provides evidentiary details about what he allegedly did to advance the conspiracy.

The Court applies the same case law that it cited when addressing similar motions by the other defendants. Count One gives Shuaib adequate notice that the Government believes that he knowingly and willingly entered a criminal conspiracy to defraud investors. The Government has furnished discovery with details about the restricted stock that Shuaib allegedly obtained to advance the conspiracy. A bill of particulars is not a discovery tool, and Shuaib has enough notice of the allegations that the Government will present to a jury trial. Under these circumstances, the Court denies Shuaib's motion for a bill of particulars.

   vii. *Motion for Disclosure of Confidential Informants (Non-dispositive)*

Shuaib has made a motion to require the Government to disclose information about confidential informants including identities, whereabouts, and criminal records. (Dkt. No. 567 at 23.) The Government opposes disclosure because Shuaib has not made a specific enough showing for the information. "What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.

35

The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.  The scope of the privilege is limited by its underlying purpose.  Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged.  Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.  A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness.  Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.  In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." *Roviaro v. U.S.*, 353 U.S. 53, 59–61 (1957) (citations omitted).  "The defendant bears the burden of showing the need for disclosure of an informant's identity, and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial.  If such is established, the government's privilege must give way." *U.S. v. Fields*, 113 F.3d 313, 324 (2d Cir. 1997) (citations omitted).

Here, Shuaib has not demonstrated what informant disclosure would accomplish at the pretrial stage that other pretrial discovery has not accomplished already.  *Cf. id.* ("The need for disclosure is far less compelling when, as here, it is sought in connection with a pretrial suppression hearing on issues [probable cause and inconsistencies] which do not bear on defendant's guilt.").  The Government essentially has committed to disclosing informant identities

closer to trial, as Judge Wolford directs. (*See* Dkt. No. 592 at 20.) Disclosure in accordance with the eventual trial order will be sufficient. The Court thus denies Shuaib's motion but without prejudice to renew before Judge Wolford as needed.

### viii.    Motion for FRE 404(b), 608, and 609 Material (Non-dispositive)

Shuaib seeks notice of evidence that the Government would use at trial under FRE 404(b), 608, and 609. Again, FRE 404(b) governs requests for disclosure of all evidence of prior bad acts that the Government intends to use in its case-in-chief. FRE 404 requires that defendants be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial." To the extent that the Government intends to use any such evidence of a prior bad act in its case in chief, the Government will produce all FRE 404(b) evidence as directed by Judge Wolford in the eventual trial order.

With respect to Shuaib's requests under FRE 608 and 609, the Court notes again that the only notice requirement imposed by either Rule applies closer to trial. FRE 609(b)(2) mandates that "the proponent [give] an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." To the extent that the Government intends to use at trial evidence falling under these rules, it must give reasonable notice as directed by Judge Wolford in the trial order.

### ix.    Motion for Preservation of Notes (Non-dispositive)

Shuaib seeks an order requiring law enforcement agents who participated in this case to preserve their rough notes. The Government essentially does not object to the request so long as it

carries no implication that a legal obligation for preservation exists.  (Dkt. No. 592 at 20–21.)  The Court directs the Government to arrange for preservation of rough notes pending further instructions from Judge Wolford.

        *x.*    *Motion for Voir Dire of Government Experts (Non-dispositive)*

Schuaib has made a motion to conduct voir dire of Government experts.  (Dkt. No. 567 at 48.)  Schuaib has phrased his motion entirely in the context of conducting voir dire outside of the presence of the trial jury.  Since Schuaib's motion is effectively a motion *in limine*, the Court defers to Judge Wolford as to the outcome of this motion.

### E.  Walter Tatum

For now, Tatum has decided not to file any pretrial motions except to join the dispositive motions that his co-defendants have filed.  (Dkt. No. 569.)  Since the only issue that Tatum raises is joinder, the Court will take a moment to address the various joinder requests that all of the parties have raised.  Every defendant has made some kind of request to join in the motions made by co-defendants.  The only argument or issue that the Court addressed above that is peculiar to a single defendant is Marcus's argument for dismissal based on reliance on the advice of counsel.  Extending that argument and the Court's analysis of it to other co-defendants would not cause any harm but would make no sense because no other defendant is in that situation.  In all other respects, however, and for the sake of preserving issues for possible appeal, the Court deems the arguments and the analysis cited above for any one defendant to apply to all the other defendants.  This joinder includes any arguments concerning dismissal of any counts of the indictment; a bill of

particulars; pretrial discovery and notices; grand jury disclosures; severance; preservation of notes; voir dire; and *Brady / Jencks / Giglio* material.

## IV.    CONCLUSION

The Court adjudicates each defendant's pretrial motions as explained above.

## V.    OBJECTIONS

A copy of this writing will be sent to counsel for the parties by electronic filing on the date below.  For the dispositive portions of this writing, any objections must be electronically filed with the Clerk of the Court within 14 days.  *See* 28 U.S.C. § 636(b)(1); FRCP 59.  "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."  *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted).

SO ORDERED.

_____/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: July 21, 2017

39