IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                          12-CR-125

GENE FOLAND,

                Defendant.

---

## PLEA AGREEMENT

The defendant, GENE FOLAND, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I.    THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to plead guilty to Count One of the Indictment which charges a violation of Title 18, United States Code, Section 1349 [Conspiracy to Commit Wire Fraud], for which the maximum possible sentence is a term of imprisonment of 20 years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of up to 3 years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 2 years, without credit for

time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

3. The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

   a. Two or more persons, in some way or manner, agreed to a common and unlawful plan to commit a fraud crime listed in Title 18, Chapter 63, namely, wire fraud; and

   b. The defendant knew the unlawful purpose of the plan and willfully joined in it.

### FACTUAL BASIS

4. The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

   a. Between in or about February 2006, and in or about August 2009, the defendant, GENE FOLAND, along with Jeffrey Klein, Arnold Wrobel, and others, in the Western District of New York and elsewhere, conspired and agreed to devise a scheme and artifice to defraud investors and to obtain money and property from investors by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice did transmit writings, signs, and signals, by means of wire communication in interstate and foreign commerce.

   b. As part of the criminal activity, FOLAND identified and obtained restricted shares of stock that would be sold to a telemarketing operation, commonly known as a "boiler room," located in Barcelona, Spain. In furtherance of the conspiracy, and to effect the objects thereof, Wrobel

and co-conspirators held the Spain boiler room out to be a "stock recommendation business" using the names Newbridge International, Breckenridge Administrative Providers and Cambridge Administrative Providers. Much of the criminal conspiracy activity occurred outside the United States.

c. Wrobel and other co-conspirators, including FOLAND, procured nearly worthless restricted shares of over-the-counter penny stock and then utilized sales people to sell that stock at inflated prices to investors through the boiler room.

d. Wrobel and other co-conspirators contacted victims via the telephone and convinced the victims to purchase valueless stocks, or near valueless stocks, being pitched by the boiler room. Wrobel and co-conspirators utilized a high pressure sales pitch to investors containing false and fraudulent representations and omissions, including, among other things, failing to inform investors that the stock being sold was restricted stock; directing investors to web sites which showed stock prices for freely traded stock, not the less valuable restricted stock actually provided; and directing investors to look at fictitious and highly optimistic press releases which had been created for the boiler room in order to make a particular stock appear valuable.

e. A Bank of America business bank account (bearing account number ending in 1929) in the name of Breckenridge Administrative Providers, Inc. ("Breckenridge") was opened at the direction of Wrobel in Hamburg, New York, in furtherance of the conspiracy. The Breckenridge Bank of America account was used by coconspirators for the purpose of, among other things, wiring fraud proceeds to members of the conspiracy.

f. After investors purchased restricted stock, some investors were directed to send payment, by international wire, to the Breckenridge bank account located in the Western District of New York, and elsewhere.

g. Including relevant conduct, the gain to FOLAND for his involvement in the conspiracy was approximately, $161,631, and more than 10 individuals were victimized as a result of the conspiracy.

h. The above facts are set forth for the limited purpose of complying with Rule 11(b)(3) of the Federal Rules of Criminal Procedure and are not intended to serve as a complete statement of the defendant's criminal conduct.

## III. SENTENCING GUIDELINES

5.  The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

6.  The government and the defendant agree that Guidelines § 2B1.1(a)(1) applies to the offense of conviction and provides for a base offense level of **7**.

### SPECIFIC OFFENSE CHARACTERISTICS
### U.S.S.G. CHAPTER 2 ADJUSTMENTS

7.  The government and the defendant agree that the following specific offense characteristics do apply:

    a.  § 2B1.1(b)(1)(F): the total loss (including relevant conduct) was in excess of $150,000 (namely, $161,631) and thus there is a **10** offense level increase.

    b.  the **2** level increase pursuant to Guidelines § 2B1.1(b)(2)(A)(i) (offense involved more than 10 victims); and

    c.  the **2** level increase pursuant to Guidelines § 2B1.1(b)(10)(B) (a substantial part of a fraudulent scheme was committed outside the United States).

### ADJUSTED OFFENSE LEVEL

8.  Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is **21**.

## ACCEPTANCE OF RESPONSIBILITY

9. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of **18**.

## CRIMINAL HISTORY CATEGORY

10. It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

11. It is the understanding of the government and the defendant that, with a total offense level of **18** and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of **27 to 33** months, a fine of $6,000 to $60,000, and a period of supervised release of 1 to 3 years. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

12. Notwithstanding the above calculations, it is the agreement of the parties pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure that, based on the factors set forth in Title 18, United States Code, Section 3553(a) and the defendant's cooperation pursuant Section VIII of this agreement, the Court at the time of sentence impose a sentence of probation and restitution in the amount of $161,631, as part of the appropriate sentence in this case. If, after reviewing the presentence report, the Court rejects this agreement, the parties will be relieved of their other obligations under this agreement and the defendant shall then be afforded the opportunity to withdraw the plea of guilty. This agreement does not affect the amount of a fine, or the length and conditions of a term of probation that may be imposed by the Court at sentencing.

13. The defendant understands that except as set forth in ¶ 12, above, the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court

## IV. STATUTE OF LIMITATIONS

14. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period

of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V. GOVERNMENT RIGHTS AND RESERVATIONS

15. The defendant understands that the government has reserved the right to:

   a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

   b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

   c. advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and/or a fine and the method of payment; and

   d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor.

16. At sentencing, the government will move to dismiss the open counts of the Indictment in this action as against the defendant.

## VI. RESTITUTION AND FINANCIAL PENALTY PROVISIONS

17. The defendant understands, and the parties agree, that the Court must require restitution in the amount of $161,631 to be paid to identified victims as part of the sentence pursuant to Sentencing Guidelines § 5E1.1 and Title 18, United States Code, Section 3663A.

The defendant understands that defendant will not be entitled to withdraw the plea of guilty based upon any restitution amount ordered by the Court.

18. The defendant agrees to disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement by the deadline set by the United States, or if no deadline is set, no later than two weeks prior to the date of sentencing. The defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. The defendant agrees to discuss or answer any questions by the United States relating to the defendant's complete financial disclosure. The defendant will submit to an examination under oath and/or a polygraph examination conducted by an examiner selected by the U.S. Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the U.S. Attorney's Office. The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

19. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

20. The defendant understands and agrees that the Court, at the time of sentencing, will order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately and subject to immediate enforcement by the United States. The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment.

21. The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, and not subject to forfeiture, will be used to offset any judgment of restitution and fine imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the United States and/or agencies thereof.

## VII. APPEAL RIGHTS

22. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence

imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence. The defendant further agrees not to appeal a restitution order which does not exceed the amount set forth in Section VI of this agreement.

23. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

24. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VIII. COOPERATION

25. The defendant will cooperate with the government by providing complete and truthful information regarding the defendant's knowledge of any and all criminal activity, whether undertaken by the defendant or others, in any way involving or related to the

conspiracy to commit wire fraud. The defendant's cooperation shall also include submitting to interviews by government attorneys and agents, as well as testifying truthfully and completely before grand juries and at such other proceedings as the government shall deem necessary, including, but not limited to pre-trial hearings, trials, sentencing hearings and forfeiture proceedings.

26. The defendant's cooperation shall also be provided to any local, state or federal authorities designated by the government and who have agreed to abide by the terms of the "Cooperation" section of this agreement. The defendant's obligation to testify truthfully and completely shall extend to proceedings in local, state and federal courts in jurisdictions which have agreed to abide by this agreement.

27. In exchange for the defendant's plea of guilty and cooperation as set forth in this agreement, the defendant will not be prosecuted by the Office of the United States Attorney for the Western District of New York for any other federal criminal offenses committed in the Western District of New York in any way involving or related to the conspiracy to commit wire fraud, committed up to the date of this agreement and about which the defendant provides complete and truthful information.

28. Further, no testimony, statements or tangible objects provided by the defendant in compliance with this agreement (or any information directly or indirectly derived therefrom) will be used against the defendant in any criminal case, except a prosecution for perjury or making false statements.

29. The defendant understands that, notwithstanding the defendant's obligation to cooperate with the government as set forth in this agreement, the government will not file a motion pursuant to Guidelines § 5K1.1 but has agreed to the provisions of paragraph 12 of this agreement.

30. This agreement does not preclude the prosecution of the defendant for perjury or making false statements in the event the defendant testifies falsely or provides false information to the government. This agreement is not contingent upon the filing of charges against, the return of an Indictment against, or the successful prosecution of, any person or entity.

31. It is a condition of this agreement that, up through the date of the defendant's sentencing, the defendant shall commit no further crimes. It is also a condition of this agreement that the defendant must, at all times, give complete, truthful and accurate information and testimony and not withhold information from the government or refuse to testify truthfully and completely. Should the defendant be sentenced prior to the completion of the defendant's cooperation with the government, the defendant's obligation to comply with the cooperation provisions of this agreement extends past sentencing.

32. In the event the government believes the defendant has violated any of the conditions of the "Cooperation" section of this agreement, the government, in addition to its other rights as set forth in the "Cooperation" section of this agreement, reserves the right: (a) to modify any recommendation the government agreed to make in a motion pursuant to

Guidelines § 5K1.1; and (b) to petition the Court, before or after sentencing, for an order declaring that the defendant has breached the "Cooperation" section and relieving the government of its obligations under this section.

33. In the event the government petitions the Court to declare that the defendant has breached the "Cooperation" section of this agreement, whether the defendant has violated any of the conditions of the "Cooperation" section shall be determined by the Court in an appropriate proceeding at which any disclosures and documents provided by the defendant shall be admissible and at which the government shall be required to establish any violation by a preponderance of the evidence. In order to establish any violation by the defendant, the government is entitled to rely on statements and information given by the defendant pursuant to this agreement.

34. If the "Cooperation" section of this agreement is declared breached by the Court:

    a. the defendant shall thereafter be subject to prosecution for any federal criminal violations of which the government has knowledge, including but not limited to, perjury and obstruction of justice;

    b. the government may withdraw any motion filed pursuant to Sentencing Guidelines § 5K1.1;

    c. the defendant has no right to withdraw the plea of guilty;

    d. the defendant shall waive all rights under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, and Sentencing Guidelines § 1B1.8 and the defendant expressly agrees that all statements, testimony and tangible objects provided by the defendant (with the exception of statements made in open court during guilty plea proceedings), whether prior or subsequent to this agreement, can be used directly and indirectly in any and all criminal proceedings against the defendant; and

e. the defendant agrees that any charges that were dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government. Furthermore, the defendant agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the Court's order declaring the agreement breached by the defendant becomes final.

35. At the time of sentencing, the government will make the nature and extent of the defendant's compliance with this agreement known to the Court. The government and the defendant will request that sentencing be adjourned until full satisfaction by the defendant of the terms of this agreement. In the event the defendant is sentenced prior to the completion of the defendant's cooperation with the government, the government reserves the right to modify any recommendation to be made by the government at sentencing pursuant to Guidelines § 5K1.1.

36. The defendant's attorney is permitted to be present at any time the defendant is questioned or interviewed by government agents regarding the matters set forth in this agreement.

## IX. FORFEITURE PROVISIONS

37. As a condition of the plea, the defendant, GENE FOLAND, agrees to the immediate criminal forfeiture of the following property pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c):

**MONETARY JUDGMENT:**

38.     The sum of eighty thousand dollars ($80,000.00) United States currency, to be evidenced by a judgment issued by this Court against the defendant. Said judgment will be referenced in the PRELIMINARY ORDER OF FORFEITURE and will provide for interest to accrue at the prevailing rate per annum and serve as a lien against the defendant's property, wherever situated, until fully satisfied.

39.     The defendant agrees that he obtained this sum from his criminal conduct that forms the basis for this Agreement and that the property listed above is properly forfeitable to the United States pursuant to Title 21, United States Code, Section 981. The defendant also agrees he has already dissipated the money he obtained in that he caused it to be either transferred or sold to, or deposited with, a third person or has been placed beyond the jurisdiction of the Court, or has been commingled with other property which cannot be divided without difficulty and that the United States of America shall be entitled to forfeiture of substitute property of the defendant pursuant to Title 21, United States Code, Section 853(p). The defendant further agrees to fully assist the government in the forfeiture of the aforementioned property and to take whatever steps are necessary to pass clear title to the United States, including, but not limited to surrender of title and execution of any documents necessary to transfer the defendant's interest in any of the above property to the United States, as deemed necessary by the government.

40.     After the acceptance of the defendant's guilty plea, and pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, the Court will issue a Preliminary and

Final Order of Forfeiture for the item listed above. The defendant hereby waives any right to notice of such Preliminary and Final Order of Forfeiture. The defendant further consents and agrees that the Preliminary and Final Order of Forfeiture shall issue and become final as to the defendant prior to sentencing and agrees that it shall be made part of the defendant's sentence and included in the judgment pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure. The defendant further agrees to waive any time restrictions or requirements as provided in Title 18, United States Code, Section 983, any notice provisions in Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that the defendant understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure, at the time the guilty plea is accepted. Forfeiture of the defendant's property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

41. The defendant knowingly, intelligently, and voluntarily waives his right to a jury trial on the forfeiture of the assets. The defendant knowingly, intelligently, and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding, including any jeopardy defense or claim of double jeopardy, whether constitutional or statutory, as to this criminal proceeding or any related civil or administrative proceeding. The defendant further agrees to waive any claim or defense under the Eighth

Amendment to the United States Constitution, including any claim of excessive fine regarding the forfeiture of assets by the United States.

## X. TOTAL AGREEMENT AND AFFIRMATIONS

42. This plea agreement represents the total agreement between the defendant, GENE FOLAND, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

JAMES P. KENNEDY, JR.
United States Attorney
Western District of New York

BY: _____
RUSSELL T. IPPOLITO, JR.
Assistant United States Attorney

Dated: August 30, 2018

I have read this agreement, which consists of 18 pages. I have had a full opportunity to discuss this agreement with my attorney, Jesse C. Pyle, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

*[Signature]*
GENE FOLAND
Defendant

Dated: August 30, 2018

*[Signature]*
JESSE C. PYLE, ESQ.
Attorney for the Defendant

Dated: August 30, 2018